OPINION
{¶ 1} Appellant, Ronald George Ziegler, appeals a September 25, 2003, Judgment Entry of the Mahoning County Court of Common Pleas. This entry awarded Appellee, Johanna Ziegler, monetary sanctions and attorney's fees following their lengthy divorce proceedings, including two prior appeals. For the following reasons, we overrule Appellant's assignments of error and affirm the trial court's decision.
 {¶ 2} Appellee, Johanna Ziegler filed her complaint for divorce on December 4, 1995, and Appellant counterclaimed for divorce.
 {¶ 3} On February 26, 1997, the parties were initially ordered to sell the marital home located in Poland, Ohio, at an agreed listing price. Appellant subsequently requested the option to purchase the home, and Appellee later agreed to this request.
 {¶ 4} The trial court granted the divorce and decided the division of marital assets on August 25, 1997. The entry gave Appellant thirty days to purchase the home. (August 25, 1997, Judgment Entry of Divorce and Division of Assets.)
 {¶ 5} Several months later, the court issued an Addendum to the Judgment Entry of Divorce holding in part that Appellant must exercise his option to purchase Appellee's equity in the marital real estate on or before December 1, 1997, or submit the house for auction. (November 13, 1997, Addendum to Judgment Entry of Divorce and Division of Assets.) On December 12, 1997, Appellant requested additional time to comply with the order to pay Appellee's equity in the marital home.
 {¶ 6} Thereafter, Appellant repeatedly filed challenges in the trial court as to the assessment and division of equity in the marital residence, but he never filed a direct appeal from either the divorce decree or the addendum.
 {¶ 7} On July 1, 1998, almost one year following the original divorce decree, Appellee requested that the court hold Appellant in contempt for his failure to comply with the court's prior orders to purchase the marital residence. In response, the court ordered compliance with the final entry of divorce within thirty days. (July 21, 1998, Entry.) Appellant did not comply with this order.
 {¶ 8} On December 15, 1999, Appellee filed a motion for emergency ex-parte relief and an affidavit in support indicating that she had a buyer for the marital home. She stated in her motion that she scheduled the closing on the sale of the home, but Appellant was interfering. The trial court ordered Appellee to proceed with the scheduled closing to sell the marital residence. (December 15, 1999, Order.) Appellant still did not cooperate.
 {¶ 9} Thereafter, the trial court held a hearing on the parties' outstanding motions. At that hearing, Appellant agreed to pay Appellee $13,000 for settlement of all claims, including those surrounding the marital residence, so he could receive the house. The trial court ordered the parties to comply with this agreement or else the house would be sold. (March 15, 2001, Tr., pp. 2-3.) If there was no compliance with this agreement, the trial court ordered that Appellant's failure to allow the sale of the house would be considered direct contempt of court.
 {¶ 10} Not surprisingly, Appellant did not comply with the foregoing agreement or the court's orders. He was incarcerated for contempt of court.
 {¶ 11} On appeal from the contempt order, Appellant purged himself by executing the deed for the sale of the marital residence. Thereafter, this Court found no merit to his appeal.Ziegler v. Ziegler, 7th Dist. No. 01 CA 52, 2003-Ohio-2553, ¶ 47.
 {¶ 12} Following appeal, Appellee sought attorney's fees and sanctions from Appellant. After a hearing on these issues, the trial court granted Appellee's request on September 25, 2003. It noted that the proceeds from the sale of the marital residence in the amount of $43,723.55 plus interest remained on deposit in the bank. This was apparently the amount remaining after the realtor fees, closing costs, and a lien on the property were paid. (March 29, 2002, Judgment Entry.)
 {¶ 13} The court ordered Appellee was to receive the first $13,000 of the sale of the marital residence proceeds. This left $30,723.55 plus interest remaining in the account. It ordered that Appellee was entitled to $5,712.50 in attorney's fees from the remaining balance of the proceeds from the sale of the house, which left $25,011.05 plus interest in the account. Finally, it awarded this remaining balance to Appellee as sanctions against Appellant. (September 25, 2003, Judgment Entry.)
 {¶ 14} Appellant filed his notice of appeal from this decision. He also filed a motion for relief from judgment in the trial court, which was overruled on January 22, 2004.
 {¶ 15} Appellant raises two assignments of error on appeal. His first assignment of error claims:
 {¶ 16} "The trial court committed reversible error by awarding all of appellant's property division to appellee without having jurisdiction to make said award."
 {¶ 17} Appellant asserts that the trial court lacked jurisdiction and authority over the original property division when it made its September 25, 2003, decision. Appellant claims that a trial court does not have authority under R.C. §3105.171(I) to modify the terms of a divorce decree relating to the property division.
 {¶ 18} However, Appellant does not at any point challenge the amount of the sanction award.
 {¶ 19} Appellee has not filed a brief in the instant appeal. App.R. 18(C) states, in pertinent part, that:
 {¶ 20} "* * * If an appellee fails to file the appellee's brief within the time provided by this rule, * * * the [appellate] court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."
 {¶ 21} Appellant is correct in his assertion that a domestic relations court does not retain jurisdiction to modify a division or disbursement of property. R.C. § 3105.171(I). Unfortunately for Appellant, this does not dispose of the action in his favor. Appellant directs this Court's attention to Rudduck v. Ruddock
(1999), 5th Dist. No. 98CA85 as dispositive of the issue. However, while Ruddock held that a trial court may not modify a division, disbursement, or distributive award, a court is well within its powers in retaining jurisdiction to effectuate the division of property. Id. at 7.
 {¶ 22} This Court in Oliver-Pavkovich v. Pavkovich, 2003 7th Dist. No. 02 CA 223, 2003-Ohio-6718, has similarly held that R.C. § 3105.171(I), "does not prevent a court from entering further orders, * * * which help execute that [divorce] decree." Id. at ¶ 17, citing McKinney v. McKinney (2001),142 Ohio App.3d 604, 608, 756 N.E.2d 694.
 {¶ 23} In the instant matter, the trial court specifically noted in its initial decree its intention to retain jurisdiction to bring about the intended results. It noted: "The Court shall continue to have jurisdiction in this matter until distribution is made and the entire matter is completed." (August 25, 1997, Judgment Entry of Divorce and Division of Assets, p. 10.)
 {¶ 24} Appellant argues on appeal that the trial court's final award was an unlawful modification of the divorce decree. Appellant apparently forgets that he committed a direct contempt in this matter.
 {¶ 25} R.C. § 2705.02(A) authorizes the punishment of acts in contempt of court when a person disobeys a lawful court order or command. An appellate court must employ the abuse of discretion standard when considering a contempt order. State, ex rel.Ventrone, v. Birkel (1981), 65 Ohio St.2d 10, 11,417 N.E.2d 1249. An abuse of discretion connotes more than an error of law; it implies that the trial court's decision was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 26} Appellee testified at the post-appeal hearing that she was significantly damaged by the continued proceedings. She was forced to take time off from work to attend court proceedings, and her finances had been tied up in attorney's fees and in the marital residence for a number of years. As a result, Appellee was prevented from contributing to their sons' college tuition. Appellee specifically requested that any sanctions or attorney's fee award be paid from the proceeds of the sale of the home because she did not believe that she would ever receive any money from Appellant otherwise. (November 18, 2003, Tr. pp. 25-27.)
 {¶ 27} In addition, the trial court had previously concluded that Appellant repeatedly frustrated the sale of the parties' marital residence in the instant matter. (March 15, 1999, Order.) The parties were first ordered to sell the home on February 26, 1997. Thereafter, Appellant repeatedly requested the option to purchase the house, but he never followed through with his requests. Appellant subsequently prevented the house from being sold at least twice. After Appellant was ordered to comply, he was eventually incarcerated for contempt since he failed to execute the deed. (November 18, 2003, Tr. pp. 8-12, 18.)Ziegler, supra, at ¶ 1, 26.
 {¶ 28} Based on the foregoing, the trial court did not act arbitrarily or unreasonably in awarding Appellee sanctions for Appellant's continuing failures to effectuate the sale of the property. These repeated failures to comply with court orders resulted in the need to maintain the residence and prolonged this divorce proceeding for more than nine years. It likewise resulted in the second potential buyers of the home filing a lien against the property for a breach of the purchase agreement. (November 18, 2003, Tr. pp. 20-21.) Thus, it resulted in litigation above and beyond the continuing divorce proceedings.
 {¶ 29} Appellant bases his entire argument on his assumption that any award beyond the agreed $13,000 to Appellee amounts to a modification of the property division, no matter the court's reasoning. Thus, Appellant relies entirely on his jurisdictional claims and believes this precludes the trial court's actions in their entirety, here. In so doing, Appellant challenges neither the amount of the award of attorney fees nor the amount of sanctions for the contempt, nor does he challenge the possibility that by making these two awards he may have been sanctioned twice. Thus, Appellant waives these arguments on appeal and we will not address these.
 {¶ 30} Based on the record here, it is apparent that the trial court was not modifying the divorce decree in contravention of R.C. § 3105.171(I). Instead, the trial court was exercising its ongoing jurisdiction in effectuating the decree and issuing a separate finding of contempt. Because the trial court has such jurisdiction, Appellant's first assignment of error lacks merit and is hereby overruled.
 {¶ 31} Appellant's second assignment of error alleges:
 {¶ 32} "The trial court comitted reversable [sic] error by granting attorneyf [sic] fees to the appellee."
 {¶ 33} Appellant claims that the trial court failed to consider the R.C. § 3105.18(H) factors and failed to find that Appellee was adversely affected by any frivolous conduct under R.C. § 2323.51.
 {¶ 34} In cases where the trial court has the appropriate authority to grant a fee request, this Court reviews an award of attorney fees for an abuse of discretion. Ceol v. Zion Indus.Inc. (1992), 81 Ohio App.3d 286, 610 N.E.2d 1076. An abuse of discretion implies that the trial court's judgment is unreasonable, arbitrary, or unconscionable. Blakemore, supra.
 {¶ 35} "* * * It is well settled in Ohio that in order for a court to order one party to pay another's attorney fees, the shifting of fees must be authorized by statute or must be based on the court's determination that the party ordered to pay fees acted `in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons.'" Gill v. Gill (1997), 1st Dist. No. C-960610, at 5, citing International Lottery, Inc. v. Kerouac
(1995), 102 Ohio App.3d 660, 657 N.E.2d 820, citing Sorin v. Bd.Of Educ. of Warrensville Hts. School Dist. (1976),46 Ohio St.2d 177, 347 N.E.2d 527.
 {¶ 36} Appellant is correct in his assertion that the trial court failed to specifically conclude that Appellee was prevented from fully litigating or protecting her interests and that Appellant had the means to pay Appellee's attorney fees. (September 25, 2003, Judgment Entry.) There was no testimony to this effect. Thus, had the trial court awarded attorney's fees pursuant to R.C. § 3105.18(H), such an award of fees would have likely been an abuse of discretion. Ranz v. Ranz (1988),51 Ohio App.3d 66, 554 N.E.2d 142.
 {¶ 37} Once again, however, Appellant fails to properly address the trial court's actions here. R.C. § 2323.51 permits a court to award attorney's fees to a party in an action when the opposing party has engaged in frivolous conduct. Such conduct includes acts designed to harass or injure another party or delay the proceedings. It also includes pleadings unsupported by law or a good-faith argument to extend the law. The court must hold a hearing to determine whether the party's conduct was committed obviously to harass or maliciously injure another party and whether any party was adversely affected before an award of fees may be rendered. Gill, supra, at 6-7; R.C. § 2323.51(B)(2);Lable Co. v. Flowers (1995), 104 Ohio App.3d 229,661 N.E.2d 782.
 {¶ 38} The record in this case reflects that such a hearing was held. Appellee testified at the hearing that she was seeking attorney's fees beginning with the period of time that the house should have been sold in 1999. She testified that although the parties were divorced in 1997, she repeatedly had to go back to court as a result of Appellant's failures to comply with the court orders and his meritless motions. Appellant filed at least three separate motions for credits and off-sets, even though he never appealed from the trial court's original decree. He also filed a motion to vacate all prior judgments. (November 18, 2003, Tr. pp. 8-13.)
 {¶ 39} Appellee also testified that Appellant filed his first notice of appeal with this Court one day before the closing date on the sale of the marital residence, but he never prosecuted that appeal. It was dismissed sua sponte by this Court. (November 18, 2003, Tr. pp. 12-13.) She further testified that they subsequently agreed several times to settle this matter, which included Appellant paying Appellee $13,000. However, Appellant never complied with his agreements. He was subsequently found in contempt of court and was incarcerated. (November 18, 2003, Tr. pp. 23-24.)
 {¶ 40} As set forth previously, Appellant appealed from that contempt finding, and his appeal was found to be meritless.Ziegler, supra. This Court specifically held, "Appellant has failed to prosecute any appeal of the relevant final appealable judgment entries in this case. * * * It is also clear that Appellant has had numerous opportunities to litigate whether or not he is owed credits and offsets from Appellee." Ziegler,
supra, at ¶ 46, 48.
 {¶ 41} Based on the foregoing, the trial court did not abuse its discretion in awarding Appellee attorney's fees pursuant to R.C. § 2323.51. The requisite hearing was held, and Appellant's conduct as depicted by Appellee, the only witness to testify, fully supports a finding that Appellant acted in bad faith. Appellant's repeated failures to comply with the trial court's orders, as well as the agreements he entered into by his own free will, support a finding that his actions were frivolous and intended to harass Appellee. Further, Appellee's hearing testimony depicts that she was injured as a result of his conduct.
 {¶ 42} As such, the trial court's award of attorney's fees was not an abuse of discretion, and Appellant's second assignment of error lacks merit and is overruled.
 {¶ 43} In conclusion, the trial court's decision is hereby affirmed in its entirety.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.